Affirmed in Part; Reversed and Remanded in
Part; and Majority Opinion and Dissenting and
Concurring Opinion filed August 16, 2011.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00195-CV



Charles Seber
and Barbara Seber, Appellants 

v.

Union Pacific
Railroad Company, Appellee 



On Appeal from
the 113th District Court

Harris County, Texas

Trial Court
Cause No. 2008-64372



 

DISSENTING AND CONCURRING OPINION

Because I disagree with the majority’s conclusion
that Union Pacific conclusively negated the Sebers’ claim of malice, I
respectfully dissent on the issue of whether traditional summary judgment was
properly granted on the Sebers’ request for exemplary damages.  I concur with
the remainder of the majority’s analysis and disposition.

The majority is correct in its recitation of the
standards and law governing our review.  In the context of a traditional motion
for summary judgment, which the trial court granted in this case, the movant
carries the burden of establishing that no material fact issue exists and that
it is entitled to judgment as a matter of law.  M.D. Anderson Hosp. &
Tumor Inst. v. Willrich, 28 S.W.3d 22, 23 (Tex. 2000) (per curiam).[1]  To be
entitled to a final traditional summary judgment, a defendant must conclusively
negate at least one essential element of each of the plaintiff’s causes of
action or conclusively establish each element of an affirmative defense.  Sci.
Spectrum, Inc. v. Martinez, 941 S.W.2d 910, 911 (Tex. 1997).  Evidence is
conclusive only if reasonable people could not differ in their conclusions.  City
of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).  If, and only if, the
movant satisfies its initial burden, will the burden shift to the non-movant to
raise a genuine, material fact issue sufficient to defeat summary judgment.  Walker
v. Harris, 924 S.W.2d 375, 377 (Tex. 1996).  We consider a grant of summary
judgment under a de novo standard of review.  Valence Operating Co. v.
Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).

The Sebers sought exemplary damages based solely on
their claim that Union Pacific acted with malice in removing the Sebers’
private railroad crossing.  See Tex. Civ. Prac. & Rem. Code § 41.003(a)
(governing recovery of exemplary damages).  The Civil Practice and Remedies
Code defines malice as “a specific intent by the defendant to cause substantial
injury or harm to the claimant.”  Id. § 41.001(7).  “Specific intent” in
this context means that the actor must have desired to cause the consequences
of his act or believed the consequences were substantially certain to result
from the act.  Reed Tool Co. v. Copelin, 689 S.W.2d 404, 406 (Tex.
1985).

The majority misapplies these standards as to the
Sebers’ claim of malice.  In a brief paragraph, the majority finds that Union
Pacific’s evidence conclusively negates specific intent to cause substantial
injury or harm because Charles Seber and Doug Woods testified at their
depositions that Union Pacific verified that the Sebers had alternative access
before it closed the crossing at issue in this lawsuit.[2]  Apparently
finding such testimony conclusive, the majority then proceeds to consider and
reject the Sebers’ responding arguments that they had made it clear to Union
Pacific that their property would be harmed by the closing of the crossing and that
they opposed such closing.

In its motion, Union Pacific likewise placed undue
emphasis on the Sebers’ alleged failure to produce evidence in support of their
exemplary damages claims.  Indeed, the only point at which Union Pacific states
that the evidence was conclusive in its favor is in the heading of the section
on exemplary damages.  In contrast, the text of the section is replete with
allegations that the Sebers had produced “no evidence” to support an award of
exemplary damages.  Specifically, Union Pacific asserted that there was no
evidence of either (1) a likelihood that serious harm would result from its
actions or (2) a specific intent to cause such harm.  Before the burden could
be shifted to the Seber’s to produce argument and evidence, however, Union
Pacific as movant had the primary (and considerably higher) burden of proving that
no material fact issue existed and that it was entitled to judgment as a matter
of law.  See, e.g., Willrich, 28 S.W.3d at 23.  In other words, the
Sebers did not have to present any evidence to defeat the traditional motion
for summary judgment unless and until Union Pacific provided conclusive
evidence in support of the motion.  See Walker, 924 S.W.2d at 377.[3]

Neither case cited by the majority in support of its
analysis involves a summary judgment. Both cases, Shed, L.L.C. v. Edom Wash
‘N Dry, L.L.C., No. 12-07-00431-CV, 2009 WL 692609 (Tex. App.—Tyler Mar.
18, 2009, pet. denied) (mem. op.), and Kinder Morgan North Texas Pipeline,
L.P. v. Justiss, 202 S.W.3d 427 (Tex. App.—Texarkana 2006, no pet.),
involved legal sufficiency challenges to the evidence produced by a plaintiff
at a jury trial.  The focus in those cases was clearly on the evidence produced
by the plaintiff, as would also be proper in a no-evidence summary judgment
context, and not on the evidence presented by the movant/defendant, as would be
proper in a traditional summary judgment context.  See Tex. R. Civ. P.
166a (governing summary judgments); City of Keller, 168 S.W.3d at 823
(“[T]he test for legal sufficiency should be the same for summary judgments,
directed verdicts, judgments notwithstanding the verdict, and appellate
no-evidence review.”); Wal-Mart Stores, Inc. v. Rodriguez, 92 S.W.3d
502, 506 & n.4 (Tex. 2002) (discussing standard of review for no-evidence
summary judgments).[4] 
In a traditional summary judgment, the focus should at least initially be on
the evidence presented by the movant.  See Walker, 924 S.W.2d at 377. 

Because Union Pacific failed to conclusively negate
at least one essential element of the Sebers claims for exemplary damages based
on malice, I would reverse the grant of traditional summary judgment on the
exemplary damages issue.  I agree with the remainder of the majority’s analysis
and disposition.

 








                                                                                    

                                                            /s/                    Martha
Hill Jamison

                                                                                    Justice

 

 

 

Panel consists of Justices Brown, Boyce,
and Jamison. (Boyce, J. Majority)

 









[1]
Union Pacific also filed a “Motion for No-Evidence Summary Judgment”; however, as
the majority clearly states, there is no indication in the record that the
trial court ruled on it.  Accordingly, we review the trial court’s action only
under traditional summary judgment standards.

 





[2]
Since the evidence indicates that Union Pacific knew, at the time of the
crossing’s closure, the likely consequences alleged by the Sebers, it appears
that the inquiry boils down to whether the alleged harm is “insubstantial” as a
matter of law.





[3]
In its motion, Union Pacific also cited testimony from Union Pacific manager
Doug Woods that (1) the decision to close the Sebers’ access was made only
after an investigation revealed that they had an alternative access to their
property, (2) he met and discussed the closure with the Sebers, (3) the closure
was pursuant to a federal mandate to close unnecessary crossings, and (4) it
only took a couple of minutes to drive between the original access and the
alternative access.  Additionally, Union Pacific cited to evidence that the
Sebers admitted that they had not been threatened, harassed, or intimidated by
Union Pacific and that Union Pacific had offered to contribute to improving the
alternative access.  Lastly, Union Pacific pointed out that Charles Seber had
made no investigation into the cost to improve the alternative access and had
not had the property appraised so as to establish the reduction in value that
the Sebers claimed occurred from the access closure.

The evidence cited by Union Pacific, while potentially
relevant to the issue of malice, does not conclusively establish that Union
Pacific did not possess a specific intent to cause substantial injury or harm
to the Sebers when it closed their private railroad crossing.  Simply
establishing that the Sebers had alternative access, or that Union Pacific had
offered to contribute to improve that access, does not conclusively disprove
substantial harm would result from closure; it would depend on the nature of
the two points of access and the actual nature of the resulting harm (the
suggestion that the two points were within two minutes of each other may also
be relevant but is likewise not conclusive).  Similarly, evidence that a
meeting took place before the closure and that the Sebers did not feel
threatened, harassed, or intimidated does not conclusively negate malice.  The
meeting may have been perfunctory, and such feelings are not requirements for
proving malice.  Further, the existence of a general interest in closing
crossings does not establish as a matter of law that no malice was involved in
the decision to close this particular crossing.  Lastly, the allegation that
the Sebers had not established the exact amount of harm to their property
challenges the sufficiency of the evidence to support their claims but does not
negate them.





[4] The Shed case can be further distinguished on
its facts. The Shed at all times provided Edom Wash ‘N Dry’s occupants access
for ingress and egress across the Shed’s property and maintained an opening in
the fence for vehicular traffic. The Sebers had no such immediate relief.